United States District Court
Southern District of Texas
**ENTERED**
May 10, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHEN MANLEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-19-4987 |
| | § | |
| LYONDELL CHEMICAL COMPANY | § | |
| and MATRIX RESOURCE INC., | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM AND RECOMMENDATION**

Pending before the court[1] are Defendant Matrix Resources, Inc.'s ("Matrix") Motion to Dismiss Plaintiff's Amended Complaint (Doc. 28) and Defendant Lyondell Chemical Company's ("Lyondell") Motion to Dismiss Plaintiff's Amended Complaint (Doc. 30).[2] The court has considered the motions, Plaintiff's responses, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendants' motions be **GRANTED**.

### **I. Case Background**

agency and a prospective employer, alleging that Defendants' discrimination and retaliation prevented his placement in a position of employment at Defendant Lyondell.

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 23, Ord. Dated Feb. 13, 2020.

[2] Defendants Matrix and Lyondell filed motions to dismiss Plaintiff's original complaint. See Doc. 14, Def. Matrix's Mot. to Dismiss Pl.'s Compl.; Doc. 17, Def. Lyondell's Mot. to Dismiss Pl.'s Compl. Plaintiff's filing of a timely amended complaint **MOOTED** those motions.

A.  **Factual Background**

Plaintiff identified himself as an African-American male.[3] During the first quarter of 2019, recruiters working for Defendant Matrix, who screened job applicants for Defendant Lyondell, contacted Plaintiff about several job openings, for which Plaintiff was qualified by "credentials, education and skill set."[4]  Soon after making contact with Plaintiff, the recruiters requested Plaintiff's date of birth and the last several digits of his social security number.[5]  Plaintiff described what happened next:

> [T]hey said it was to be used to create a type of profile and after such profile or racial profile was created over the phone and online for their use each time I was no longer consider for any job opportunity by that the recruiters, employee(s) and/or agents of Matrix Resources and Lyondell Basell Chemical Company that they initially contacted me for.  After not hearing anything back for them concerning the opportunities I then followed up with the recruiters about the job opportunities or status of my application(s) in turn they would not return my calls and or respond to any emails[.][6]

In his complaint, Plaintiff also alleged that Defendants performed

---

[3]     Doc. 18-1, Attach. 2 to Pl.'s 1st Am. Compl., Pl.'s Aff. p. 2.  The docketed copy of the amended complaint is missing a portion of Plaintiff's factual allegations.  As far as the court can discern, the factual allegations present in the docketed copy of the pleading are word for word identical to those in the affidavit that Plaintiff submitted therewith.  Therefore, the court relies on the affidavit, in addition to the amended complaint, for the facts offered by Plaintiff in support of his claims.

[4]     Id. p. 1.

[5]     See id. pp. 1-2.

[6]     Id. p. 2.  The court transcribed the text as presented by Plaintiff without alterations other than the capitalization of the initial letter and the addition of a missing period at the end.

background checks and accessed credit reports.[7]

## B. Procedural Background

On June 24, 2011, Plaintiff filed a lawsuit against Defendant Matrix and two other business entities ("Invesco Lawsuit").[8] In the Invesco Lawsuit, Plaintiff "alleged discrimination based on race, color, and gender" in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-17; 42 U.S.C. § 1981 ("Section 1981"); and Section 605 of the Fair Credit Reporting Act ("FCRA § 605"), 15 U.S.C. § 1681c.[9]

The supporting factual allegations included the following: (1) the defendants had "a pattern and a blanket policy to deny employment opportunity [sic] to individuals with criminal records which disparately impact[ed] and adversely affect[ed] the minority applicant pools who are protected classes under law[;]" and (2) "the retrieved criminal information antedated seven years which also violated plaintiff's rights to under the FCRA § 605 and was

---

[7] See Doc. 18, Pl.'s 1st Am. Orig. Compl. pp. 2-3, 6 of 33. Because the pages of Plaintiff's complaint are not numbered and one page appears to be missing, the court uses the numbering assigned upon docketing.

[8] See Manley v. Invesco, 555 F. App'x 344, 346 (5th Cir. 2014)(unpublished). The court includes information about this prior lawsuit primarily because it appears to serve as the basis for Plaintiff's retaliation claim against Defendant Matrix. Plaintiff is no stranger to filing lawsuits in this district. In addition to the Invesco Lawsuit, Plaintiff filed three other civil lawsuits, including two that are currently pending, one of which pending lawsuits presents the same claims as this one against the same defendants. See Manley v. Lyondell Chem. Co., Civ. Action No. H-20-558 (action filed on Feb. 11, 2020); Manley v. Trellis Co., Civ. Action No. H-20-279 (action filed on Jan. 21, 2020); Manley v. Tex. S. Univ., Civ. Action No. H-14-2749 (case dismissed on May 12, 2015). Plaintiff also has an ongoing bankruptcy action filed in this district. See In re: Manley, Bankruptcy Action No. 19-33976.

[9] Manley, 555 F. App'x at 346.

used as the sole determinant in denying plaintiff an employment opportunity."[10]  On appeal of the district court's granting of summary judgment against Plaintiff, the Fifth Circuit affirmed the district court's dismissal of Plaintiff's disparate treatment and disparate impact claims for lack of standing.[11]

On December 23, 2019, Plaintiff filed the present lawsuit, which asserted similar claims to those in the Invesco Lawsuit.[12] After Defendants filed motions to dismiss, Plaintiff amended his complaint, attaching email correspondence and an affidavit.[13]  The amended complaint was nearly identical to the original complaint and only loosely suggested specific causes of action.[14]

Plaintiff raised three causes of action alleging employment discrimination under the provisions of Title VII, Section 1981, and/or the Texas Commission on Human Rights Act ("TCHRA"), Texas Labor Code §§ 21.001-21.556: (1) disparate impact; (2) disparate treatment; and (3) retaliation.[15]  Other claims purportedly raised

---

[10]  Id.

[11]  See id. at 348-49.  In a footnote, the Fifth Circuit addressed Plaintiff's claim pursuant to FCRA § 605, stating that the district court granted summary judgment because none of the defendants was a credit reporting agency, a finding that Plaintiff did not challenge.  See id. at 347 n.3.

[12]  See Doc. 1, Pl.'s Orig. Compl.

[13]  See Doc. 14, Def. Matrix's Mot. to Dismiss Pl.'s Compl.; Doc. 17, Def. Lyondell's Mot. to Dismiss Pl.'s Compl.; Doc. 18, Pl.'s 1st Am. Orig. Compl.

[14]  Compare Doc. 1, Pl.'s Orig. Compl. with Doc. 18, Pl.'s 1st Am. Orig. Compl.

[15]  See Doc. 18, Pl.'s 1st Am. Orig. Compl. pp. 2-8 of 33.

in the amended complaint were violations of FCRA § 605 and Texas Business and Commerce Code § 20.05 ("TB&CC § 20.05"), as well as the state-law claims of tortious interference with a contract and invasion of privacy.[16]  Plaintiff sought $300,000 in compensatory damages and $10,000,000 in "punitive damages and non-pecuniary losses[.]"[17]

At the same time that Plaintiff filed the amended complaint, he filed identical responses to Defendants' motions.[18]  Defendants filed replies and, a week later, filed the pending motions to dismiss Plaintiff's amended complaint in which they incorporated the arguments presented in their earlier motions.[19]  Plaintiff did not file responses to Defendants' second motions to dismiss.[20]

## II.  Dismissal Standard

Pursuant to the federal rules, dismissal of an action is appropriate whenever the court lacks subject matter jurisdiction.

---

[16]    See id. pp. 3, 6-8 of 33.

[17]    Id. p. 9 of 33.

[18]    See Doc. 19, Pl.'s Mem. in Resp. to Def. Lyondell's Mot. to Dismiss; Doc. 20, Pl.'s Aff.; Doc. 21, Pl.'s Mem. in Resp. to Def. Matrix's Mot. to Dismiss.

[19]    See Doc. 28, Def. Matrix's Mot. to Dismiss Pl.'s Am. Compl.; Doc. 30, Def. Lyondell's Mot. to Dismiss Pl.'s Am. Compl.

[20]    The Local Rules state that failure to respond to a motion will be taken as a representation of no opposition. L.R. 7.4. Generally, the non-moving party has twenty-one days to file a response before the lack of response is considered a lack of opposition. See L.R. 7.3. However, because the court finds it improper to dismiss this pro se action merely because of the absence of a response, this court carefully considers the merits of the pending unanswered dispositive motions as well as Plaintiff's responses to Defendants' first motions to dismiss.

Fed. R. Civ. P. 12(b)(1), 12(h)(3). The party asserting jurisdiction bears the burden of proof that jurisdiction does exist. Morris v. Thompson, 852 F.3d 416, 419 (5th Cir. 2017)(citing Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001)). A district court's jurisdiction is limited to actual cases or controversies. Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992). Constitutional "standing is an essential and unchanging part of the case-or-controversy requirement . . . ." Id. at 560; see also McCall v. Dretke, 390 F.3d 358, 361 (5th Cir. 2004)(explaining that standing is an essential component of federal subject matter jurisdiction).

To plead constitutional standing, a plaintiff must satisfy three elements. See OCA-Greater Houston v. Tex., 867 F.3d 604, 609-10 (5th Cir. 2017)(listing the "well-known requirements of Lujan" in a case addressing associational or organizational standing). The elements are: (1) "an injury in fact[;]" (2) a fairly traceable causal connection between the injury and the defendant's actions; and (3) a likelihood that the injury can be redressed by a favorable decision. Id. at 610.

Rule 12(b)(6) allows dismissal of an action whenever the complaint, on its face, fails to state a claim upon which relief can be granted. The court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts. Shaw v. Villanueva, 918 F.3d 414, 416 (5th Cir.

2019)(quoting Heaney v. U.S. Veterans Admin., 756 F.2d 1215, 1217 (5th Cir. 1985)). Pro se complaints must be construed liberally and "must be held to less stringent standards than formal pleadings drafted by lawyers[.]" See Erickson v. Pardus, 551 U.S. 89, 94 (2007). Even so, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Amos v. Palmetto Gov't Benefit Admin., 122 F. App'x 105, 109 (5th Cir. 2005)(unpublished)(quoting Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir.1993)).

A complaint need not contain "detailed factual allegations" but must include sufficient facts to indicate the plausibility of the claims asserted, raising the "right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plausibility means that the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. 678.

A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. In other words, Plaintiff must allege facts that plausibly support each element of each cause of action for which he bears the burden of proof at trial. See id. (explaining that facts, not just recitation of elements are necessary); Comcast Corp. v. Nat'l Ass'n of African American-Owned

Media, ___ U.S. ___, 140 S. Ct. 1009, 1014 (2020)(stating that, to determine what "the plaintiff must plausibly allege at the outset of a lawsuit, . . . ask what the plaintiff must prove in the trial at its end[]"). The factual allegations must allow for an inference of "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. 678.

### III. Analysis

Defendants' motions raise challenges to the sufficiency of the factual allegations in support of the claims raised in Plaintiff's amended complaint. Defendants also challenge Plaintiff's assertion of standing to bring claims pursuant to FCRA § 605 and TB&CC § 20.05.[21] The court begins with the second issue as it questions the court's subject matter jurisdiction.

**A.  Credit-Reporting Violations**

The FCRA prohibits a consumer reporting agency from including in a consumer credit report "accounts placed for collection or charged to profit and loss which antedate the report by more than seven years" or "[a]ny other adverse item of information, other than records of convictions of crimes[,] which antedates the report by more than seven years." 15 U.S.C. § 1681c(a). TB&CC § 20.05 prohibits a consumer reporting agency from furnishing a credit report containing information related to "a record of arrest,

---

[21] Defendant Matrix only challenges Plaintiff's standing to bring a claim pursuant to FCRA § 605. Defendant Lyondell challenges standing under both federal and state statutes. The court addresses both claims as to both Defendants because of the challenge to the court's subject matter jurisdiction.

indictment, or conviction of a crime in which the date of disposition, release, or parole predates the consumer report by more than seven years." Consumer reporting agencies, as defined by both statutes, are persons that assemble and/or evaluate consumer credit information for the purpose of providing consumer reports to third parties.  15 U.S.C. 1681a(f); Tex. Bus. & Com. Code § 20.01.

Plaintiff alleged that his credit report, which was accessed by Defendants, "violated the standards of the FCRA § 605 . . . [and TB&CC § 20.05]" because the report contained information that was more than seven years old.[22]  Plaintiff did not allege that Defendants were consumer reporting agencies, which they clearly were not, or that they assembled the information in Plaintiff's credit report or evaluated that information to determine what would be included.  Plaintiff alleged that Defendants merely accessed his credit report.  Thus, Plaintiff failed to allege that he suffered an injury resulting from the inclusion of improper information in his credit report that was fairly traceable to Defendants' conduct.

Plaintiff's claims pursuant to the FCRA and TB&CC § 20.05 should be dismissed for lack of standing.

## B. <u>Employment Discrimination</u>

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race,

---

[22]     Doc. 18, Pl.'s 1st Am. Orig. Compl. p. 6 of 33; <u>see also</u> p. 3 of 33.

color, religion, sex, or national origin" and prohibits employment agencies from "fail[ing] or refus[ing] to refer for employment" or otherwise discriminating against an individual because of his "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a); 42 U.S.C. § 2000e-2(b). Title VII also prohibits an employer from retaliating against an employee who has presented a charge of discrimination or engaged in other protected activity. 42 U.S.C. § 2000e-3(a).

TCHRA provides the same protections. See Tex. Lab. Code §§ 21.051, 21.052, 21.055. TCHRA was designed to "provide for the execution of the policies of Title VII." Tex. Lab. Code 21.001(1). Both federal and state courts therefore "apply analogous federal statutes and cases when interpreting TCHRA." Jurach v. Safety Vision, LLC, 642 F. App'x 313, 318 (5th Cir. 2016)(unpublished); see also Mission Consol. Indep. Sch. Dist. v. Garcia, 372 S.W.3d 629, 633-34 (Tex. 2012)(stating that Texas courts consistently rely on federal law to guide the reading of TCHRA).

Section 1981 provides an additional avenue of recourse for persons who experience intentional discrimination in employment "solely because of their ancestry or ethnic characteristics." See also Odubela v. Exxon Mobil Corp., 736 F. App'x 437, 442 (5th Cir. 2018)(unpublished)(quoting St. Francis Coll. v. Al-Khazraji, 481 U.S. 604, 613 (1987)). Claims brought under Section 1981 are analyzed under the same legal standard as Title VII claims. See

10

id. (citing Byers v. Dall. Morning News, Inc., 209 F.3d 419, 422 n.1 (5th Cir. 2000)).

For all three sources of protection against employment discrimination, a plaintiff must plead facts that support each element of a prima facie case. See Twombly, 550 U.S. at 555. In other words, a plaintiff may not rely on conclusory allegations or a mere recitation of the elements themselves. Id.

### 1. Disparate Impact[23]

Plaintiff's disparate impact claim is based on the allegation that Defendants' practice of acquiring criminal histories during the selection process had "a disparate impact upon plaintiff and disparately impact[ed] job seekers of plaintiff[']s race."[24]

To state a prima facie case of disparate impact, a plaintiff must: "(1) identify the employment practice that has the allegedly disproportionate impact[;] and (2) establish causation by offering statistical evidence to show that the practice in question has resulted in prohibited discrimination." Manley, 555 F. App'x at 348 (quoting Stout v. Baxter Healthcare Corp., 282 F.3d 856, 860 (5th Cir. 2002))(internal quotation marks omitted). "Ordinarily, a prima facie disparate impact case requires a showing of a

---

[23] Because Section 1981 only protects against intentional discrimination, disparate-impact claims, as a matter of law, cannot be brought pursuant to Section 1981. Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex., 40 F.3d 698, 715 (5th Cir. 1994).

[24] Doc. 18, Pl.'s 1st Am. Orig. Compl. p. 3 of 33; see also id. pp. 2, 4-6 of 33.

11

substantial statistical disparity between protected and non-protected workers in regards to employment or promotion." Stout, 282 F.3d at 860 (quoting Munoz v. Orr, 200 F.3d 291, 299–300 (5th Cir. 2000))(internal quotation marks omitted).

Plaintiff's allegations only satisfy the first element of a prima facie case. Plaintiff attempted to satisfy the second element of a disparate impact claim by conclusively stating that Defendants' employment practice excluded African-American men at a "higher rate than persons of other groups similar[ly] situated."[25] That allegation is far too vague to state a substantial statistical disparity between African-American men and other job applicants outside of the protected classes.

Plaintiff's disparate-impact cause of action should be dismissed.

### 2. Disparate Treatment

Presumably in the alternative to disparate impact, Plaintiff alleged that Defendants ascertained his race when they accessed his criminal history and/or credit report and intentionally discriminated against him based on his race[26] by eliminating him

---

[25] Id. p. 2 of 33.

[26] Throughout his complaint, Plaintiff referred to discrimination variously based on "race, sex, and color[;]" "race, sex, color, or national origin[;]" "race, color, gender, sex, and age[;]" and "race, color, sex, age, and/or gender." Id. pp. 2, 3, 5, 7 of 33. He also mentioned that Defendants' practice of acquiring criminal histories "disparately impact[ed] and adversely affect[ed] the minority applicant pools, who are protected classes under the law." Id. p. 6 of 33.
     Although Plaintiff identified other protected categories, the only protected traits he claimed were African-American and male. Additionally, the

12

from the selection process.[27]

To plead a disparate treatment claim, a plaintiff must allege facts indicating that he: "(1) is a member of a protected class[;] (2) was qualified for his position[;] (3) was subject to an adverse employment action[;] and (4) was replaced by someone outside his protected class or was treated less favorably than other similarly situated employees outside his class." Melvin v. Barr Roofing Co., ___ F. App'x ___, No. 19-10214, 2020 WL 1696121, at *3 (5th Cir. Apr. 7, 2020)(unpublished)(quoting Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll., 719 F.3d 356, 363 (5th Cir. 2013))(internal alterations and quotation marks omitted). To meet the less-favorable-treatment option of the fourth element, a plaintiff must identify at least one person "outside of his protected class who was treated more favorably under nearly identical circumstances." Alkhawaldeh v. Dow Chem. Co., 851 F.3d 422, 426 (5th Cir. 2017)(quoting Lee v. Kan. City S. Ry. Co., 574 F.3d 253, 259 (5th Cir. 2009))(internal quotation marks omitted).

Plaintiff identifies two positions for which Defendants did not hire Plaintiff, "Business Analyst job role" and "Change

---

only theory of discrimination asserted with any factual support at all was that Defendants discovered his race through accessing his criminal history and/or credit reports and eliminated him from consideration based on that information. Accordingly, Plaintiff failed to raise any claim of discrimination based on any of the other characteristics above the level of sheer speculation, far below the necessary pleading standard of plausibility. To the extent Plaintiff intended to bring discrimination claims for others based on any other protected characteristics, he failed to state an injury in fact particularized to himself for those claims.

[27] See id. pp. 2-3, 6 of 33.

management job role[.]"[28]  However, Plaintiff wholly fails to identify whom Defendants hired in his stead for either of those positions or to identify even one person of another race whom they treated more favorably than Plaintiff.

Plaintiff's disparate-treatment cause of action should be dismissed.

### 3. Retaliation

For the retaliation claim, Plaintiff asserted that Defendant Matrix failed to refer or hire him "due to prior litigation[,]" presumably the Invesco Lawsuit.[29]

To establish a prima facie case of retaliation, a plaintiff must state: (1) that he participated in a protected activity; (2) that he suffered an adverse action; and (3) that there was a causal connection between the protected activity and the adverse action. Buckhanan v. Shinseki, 665 F. App'x 343, 346-47 (5th Cir. 2016)(unpublished)(quoting Stewart v. Miss. Transp. Comm'n, 586 F.3d 321, 331 (5th Cir. 2009)).  On pleading, the causal connection need only be that the protected activity and the adverse action occurred close in time.  See Haire, 719 F.3d at 368 (citing Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001)).

As noted, Plaintiff referred to prior litigation against

---

[28]   Id. p. 8 of 33.

[29]   Id. p. 4 of 33; see also id. pp. 2-3 of 33.

14

Defendant Matrix[30] without naming the case or providing when that prior case was litigated. The court takes judicial notice of the case Plaintiff filed in June 2011 against Defendant Matrix for discrimination. Although the filing of that case qualified as protected activity, the lapse of almost eight years between that protected activity and the alleged retaliation is much too long to support even a prima facie case of retaliation. See Haire, 719 F.3d at 368 (indicating that three months was close timing).

Plaintiff's retaliation cause of action should be dismissed.

## C. State-Law Torts

Although the court has recommended dismissal of all federal claims in this lawsuit, the court may exercise supplemental jurisdiction over the remaining state law claims. See 28 U.S.C. § 1367(a). On the other hand, the court has discretion to decline exercising supplemental jurisdiction after dismissal of all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3); see also Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 351 (1988)(stating that, when a district court dismisses the sole federal claim early in litigation, it has a compelling reason not to continue to exercise jurisdiction over the remainder of the case). The Fifth Circuit has counseled that, in determining

---

[30] Plaintiff's amended complaint is unclear as to whether Plaintiff intended to raise a retaliation claim against Defendant Lyondell as well. Regardless of his intent, Plaintiff failed to identify any protected activity in which he engaged related to discriminatory conduct on Defendant Lyondell's part. Plaintiff failed to allege even the bare bones of a retaliation claim against Defendant Lyondell.

whether to exercise supplemental jurisdiction over remaining state law claims after dismissal of all federal claims, a court must consider the statutory factors as well as the common law factors of judicial economy, convenience, fairness, and comity. Brookshire Bros. Holding, Inc. v. Dayco Products, Inc., 554 F.3d 595, 601-02 (5th Cir. 2009).

Here, the federal claims over which the court had original jurisdiction should be dismissed at the pleading stage when no discovery has commenced and where no compelling reason exists to warrant this court's continuing to exercise supplemental jurisdiction over the remaining purely state law claims.

Accordingly, Plaintiff's claims of tortious interference with a contract and invasion of privacy should be dismissed without prejudice to refiling in state court within the time constraints of 28 U.S.C. § 1367(d).

### IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant Matrix's Motion to Dismiss Plaintiff's Amended Complaint and Defendant Lyondell's Motion to Dismiss Plaintiff's Amended Complaint be **GRANTED.**

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order

2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 10th day of May, 2020.

Nancy K. Johnson
United States Magistrate Judge